IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KALIEF LADSON,<br>　　　Plaintiff,<br><br>　　v.<br><br>JANE DOE #1, *et al.*,<br>　　　Defendants. | :<br>:<br>:<br>: 　CIVIL ACTION NO. 24-CV-5694<br>:<br>:<br>: |

**MEMORANDUM**

**GALLAGHER, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　November 12, 2024

Kalief Ladson, a prisoner currently in custody at SCI Frackville, filed this civil rights action naming three unknown Defendants employed at the Curran Fromhold Correctional Facility ("CFCF") in Philadelphia—specifically a correctional officer, a sergeant, and the Superintendent of the facility. Each Defendant is named in his or her individual and official capacities. Ladson also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Ladson leave to proceed *in forma pauperis* and dismiss the Complaint.

**I.　　FACTUAL ALLEGATIONS**[1]

Ladson's allegations are brief. He asserts that he arrived at CFCF in January 2023 and was placed in "inadequate living space that was like [a] multi-purpose room in nature on D23 Block in the facility." (Compl. at 13.) He contends that the area has "less than the constitutional minimum amount of floor space per prisoner, there are no ladders on bunk beds exposing prisoners to serious

---

[1] Ladson used the form complaint available to unrepresented litigants to file his claims and included additional typewritten pages. (ECF No. 2.) The Court considers the entire submission to constitute the Complaint, to which the Court adopts the sequential pagination assigned by the CM/ECF docketing system.. The factual allegations set forth in this Memorandum are taken from Complaint.

harm, no desks, shelves, or cabinets for property, and the living quarters cannot be electronically opened by officers like a standard facility and officers have to manually lock and unlock quarters which creates security risks and fire hazards." (*Id*.) Ladson contends that these conditions of confinement violated his right against cruel and unusual punishment during his detention at CFCF from January 2023 until April 2023.[2] (*Id*. at 13-14.) He seeks a declaration that his rights have been violated,[3] money damages, and an injunction "compelling proper authorities to implement a more adequate grievance system." (*Id*. at 14.)

## II.   STANDARD OF REVIEW

The Court grants Ladson leave to proceed *in forma pauperis*.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v.*

---

[2] Public records indicate that Ladson was housed at CFCF as a pretrial detainee. *See Commonwealth v. Ladson*, CP-51-CR-0015184-2013 (C.P. Philadelphia). Although Ladson couches his claim as a violation of the Eighth Amendment, as a pretrial detainee at CFCF his claim is properly analyzed as a Fourteenth Amendment due process violation. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

[3] The request for a declaration that Ladson's rights have been violated must be dismissed. Declaratory relief is unavailable to adjudicate past conduct, so Ladson's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct"); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[4] Because Ladson is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

*McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Ladson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.    DISCUSSION

Ladson asserts constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### A.     Official Capacity Claims

Ladson asserts claims against the John Doe Defendants, all of whom appear to be employees of the City of Philadelphia at CFCF. Claims against City officials named in their official capacity are indistinguishable from claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases). "It is well-settled that, if there is no violation in the

first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Ladson fails to allege that he was injured due to a policy or custom of the City. Indeed, he fails to make any policy allegations at all. For this reason, all official capacity claims for money damages must be dismissed. Because the Court ultimately concludes that any underlying claims are not plausible, the dismissal will be with prejudice.

**B.     Individual Capacity Claims**

**1.     Overcrowded Conditions**

Ladson asserts claims against the three John Doe Defendants in their individual capacities based on the conditions under which he was held when he was booked into CFCF. Specifically, he cites to being housed in a multi-purpose room with overcrowded conditions, and no ladders on bunk beds, desks, shelves, or cabinets for property, and where doors had to be manually opened by officers.

To establish a basis for a Fourteenth Amendment violation, a detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). In that regard, a "'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012)

(abrogation on other grounds recognized by *Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Stevenson*, 495 F.3d at 68)); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution."). Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

The overall condition of housing multiple inmates in a cell or in a multi-purpose room does not alone establish a constitutional violation. *See Hubbard*, 538 F.3d at 236 n.6 (3d Cir. 2008) (pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor."); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (*per curiam*) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."). Ladson has not stated a plausible constitutional violation because he has not alleged that the overcrowded conditions amounted to punishment, deprived him of a basic need, or otherwise caused him harm. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *see also Bell*, 441 U.S. at 542-43 (double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and the average length of incarceration was 60 days); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) ("The critical issue for Eighth Amendment purposes is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed

the prisoner."); *Hubbard*, 538 F.3d at 232-35 (triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *Walker v. George W. Hill Corr.*, No. 18-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding). Ladson's constitutional claim about being housed in a multi-purpose room with overcrowded conditions, and with no desks, shelves, or cabinets for property is, accordingly, not plausible and dismissed.

His constitutional claim about the absence of ladders for bunk beds and automatically opening doors is also not plausible. The general absence of a ladder for top bunks or other safety mechanisms in a prison cell at most suggests negligence and does not give rise to a constitutional claim. *See Tindell v. City of Phila.*, No. 17-907, 2017 WL 3028598, at *2 (E D. Pa. July 14, 2017) (citations omitted); *see also, e.g.*, *Mikell v. Harry*, No. 16-2254, 2018 WL 501000, at *5 (M.D. Pa. Jan. 22, 2018) ("Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference."); *Vercusky v. Purdue*, No. 15-2461, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) ("This Court similarly concludes that Plaintiff[']s allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU at FCI-Schuylkill does not amount to a cognizable constitutional violation."); *Tutora v. Sweeney*, No. 14-4458, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious

condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Williams v. Corizon*, No. 12-2412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013) ("To the extent that Plaintiff attempts to argue that Defendant City of Philadelphia is liable because they did not have ladders for all the bunk beds, such argument fails, since that is, at most, negligence, which does not demonstrate the requisite culpability for liability to attach."); *Walker v. Walsh*, No. 11-1750, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury." (internal quotation marks omitted)); *Pumphrey v. Smith*, No. 09-233, 2010 WL 4983675, at *4 (W.D. Pa. Dec. 2, 2010) ("The lack of a bunk ladder in a prison cell does not meet the stringent requirements of deliberate indifference."); *see also Franco-Calzada v. United States*, 375 F. App'x 217, 218-19 (3d Cir. 2010) (*per curiam*) (dismissing appeal as frivolous when plaintiff's constitutional claims rested on allegations that he fell from a faulty ladder attached to his top bunk, which defendants knew or should have known to be unsafe because at least two other inmates had fallen). Finally, the Court is unable to discern any constitutional violation arising from the use of manually locking doors in the CFCF multi-purpose room, particularly since Ladson fails to allege that he suffered any harm arising from the fact that the doors had to be locked and unlocked manually.

    **2.**    **Grievance Processes**

Ladson also may be alleging a claim that the grievance process at CFCF was constitutional inadequate since part of the relief he seeks is reform to the system. (Compl. at 14.) This claim is also not plausible and will be dismissed. Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641,

647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Ladson predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

### IV.   CONCLUSION

For the reasons stated, the Court will dismiss Ladson's Complaint. Because an attempt to amend these claims would prove futile, the dismissal will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the PLRA should be with leave to amend "unless amendment would be inequitable or futile"). An appropriate Order will be entered separately. *See* Fed. R. Civ. P. 58(a).

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge